```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ENVIROCARE TECHNOLOGIES, LLC,

                          Plaintiff,       MEMORANDUM & ORDER
                                           11-CV-3458(JS)(ETB)
          -against-

ROMAN SIMANOVSKY and ALEX SHLAEN (d/b/a
NW Class Vacuum Supplies),

                          Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:    Gerard F. Dunne, Esq.
                  Joseph Anthony Dunne, Esq.
                  Law Office of Gerard F. Dunne, P.C.
                  156 Fifth Avenue, Suite 1223
                  New York, NY 10010

For Defendants:   Geoffrey Robert Batsiyan, Esq.
                  Law Office of Geoffrey Batsiyan
                  2753 Coney Island Ave, Suite 224
                  Brooklyn, NY 11235
```

SEYBERT, District Judge:

Plaintiff EnviroCare Technologies, LLC ("Plaintiff" or "Envirocare") commenced this action on July 19, 2011 against Roman Simanovsky and Alex Shlaen d/b/a NW Class Vacuum Supplies (collectively, "Defendants") asserting a trademark infringement claim and various state law claims arising out of Defendants' sale of ENVIROCARE-branded vacuum supplies. Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(3) for improper venue, or, in the alternative, requesting a transfer of venue pursuant

to 28 U.S.C. § 1404(a). For the reasons stated below, Defendants' motion is DENIED.

BACKGROUND

Plaintiff is a New York limited liability company that manufactures, markets, and sells vacuum cleaner bags, filters, and other replacement accessories under the registered trademark ENVIROCARE. (Compl. ¶¶ 10, 14.) It is organized under the laws of New York, and its principle place of business is in Bohemia, New York. (Compl. ¶ 1.) Defendants, both Oregon residents, operate an "internet store" called NW Class, through which they market and sell accessories for vacuum cleaners, including ENVIROCARE-branded products. (Compl. ¶¶ 2-4, 17; Dunne Decl. Exs. 1-2; Shlaen Aff. ¶ 1(A), (D), (F); Simanovsky Aff. ¶ 1(A), (D), (F).) This "internet store" is not a physical store or even an independent website. Rather, customers access it through "storefronts" hosted by Amazon.com and eBay.com. (Dunne Decl. ¶¶ 2-3 & Exs. 1, 2.) As of October 3, 2011, NW Class had 40,312 reviewed transactions on eBay.com and 5,658 transactions on Amazon.com. (Dunne Decl. ¶¶ 2-3 & Exs. 1, 2.)

In June 2011, Greg Seck, the president and founder of Envirocare, had his son purchase an ENVIROCARE-branded vacuum bag from Defendants' Amazon-based store. (Seck Decl. ¶ 4.) The order confirmation stated that the product was "[s]old by Roman Simanovsky," and the item was shipped by Amazon to Plaintiff's

2

office in Bohemia, New York. (Seck Decl. Ex. 1.)[1] After receiving the vacuum bag, Mr. Seck compared it to Envirocare's vacuum bags and "several discrepancies were detected," which, according to Mr. Seck, "indicate[d] that the bags shipped by Roman Simanovsky and NW Class were not genuine Envirocare-branded products." (Seck Decl. ¶ 5.) Plaintiff commenced this trademark infringement action shortly thereafter.

On September 20, 2011, Defendants moved to dismiss or, in the alternative, change venue. Plaintiff filed its opposition on October 4, 2011. Defendants did not file a reply.

## DISCUSSION

Defendants move to dismiss on two grounds: for lack of personal jurisdiction and for improper venue. In the alternative, Defendants move for a change of venue in the interest of justice.

I. Lack of Personal Jurisdiction

    A. Legal Standard under Rule 12(b)(2)

A plaintiff bears the burden of demonstrating personal jurisdiction over the persons or entities sued. Penguin Grp. (USA), Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010)

---

[1] Mr. Seck's son made two additional purchases of ENVIROCARE-branded products from Defendants' Amazon-based store on August 2, 2011 and September 1, 2011. (Seck Decl. ¶¶ 7-8.) Both purchases were "[s]old by Roman Simanovsky" and shipped by Amazon to Plaintiff's Bohemia, New York address. (Seck Decl. Exs. 2, 3.)

3

(citation omitted).  The Court has "considerable procedural leeway" in resolving these motions: it may decide the motion on the basis of the parties' affidavits, "permit discovery in aid of the motion, or . . . conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).  A plaintiff's precise burden depends on how the Court elects to address the jurisdiction issue.  Id.  Short of a "full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  Id.  While a plaintiff will eventually have to establish jurisdiction by a preponderance of the evidence at trial or a pretrial evidentiary hearing, "until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."  Id.

"A plaintiff can make this showing through [its] own affidavits and supporting materials, containing [a good faith] averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." In re Methyl Tertiary Butyl Ether Prod. Liab. Litig., 399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (alterations in original) (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)) (internal quotation marks omitted).  When the issue is addressed

on affidavits, all allegations are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. Id.; DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001). Thus, the Court accepts Plaintiff's evidence as true. See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004) ("[A] court may consider materials outside the pleadings, but must credit the plaintiff's averments of jurisdictional facts as true.").

    B.    Determining Personal Jurisdiction

Whether or not a defendant is subject to personal jurisdiction involves a two-part inquiry. First, the Court asks whether Defendants' acts bring them within reach of the long-arm statute of the state in which the Court sits. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir, 2005). Second, if the state's long-arm statute permits the Court's exercise of jurisdiction, then the Court determines whether such exercise would be consistent with the due process guarantees of the U.S. Constitution. See id.

    1.    New York's Long-Arm Statute

Plaintiff argues that Defendants are subject to personal jurisdiction under N.Y. C.P.L.R. 302(a)(1), which provides for the exercise of long-arm jurisdiction over an out-of-state-defendant who "transacts any business within the state

or contracts anywhere to supply goods or services in the state." See also Grand River, 425 F.3d at 166. A party need not be physically present in the state for the court to obtain personal jurisdiction. See Chloé v. Queen Bee of Beverly Hills, L.L.C., 616 F.3d 158, 169 (2d Cir. 2010). Rather, New York courts define transacting business as "purposeful activity--'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 299 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)).[2] "Moreover, where there is a showing that business was transacted [in New York], there must be a 'substantial nexus' between the business and the cause of action." Grand River, 425 F.3d at 166 (citation omitted).

Accordingly, courts in New York have explained that C.P.L.R. 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction,

---

[2] Courts have noted that this standard tends "to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful[] avail[ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 247 (alterations in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

6

even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloé, 616 F.3d at 170 (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195 (1988)) (internal quotation marks omitted). In fact, courts in this circuit have concluded that the single act of selling counterfeit goods in New York is sufficient to invoke jurisdiction. See, e.g., Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (finding that the court had personal jurisdiction over defendants who admitted to shipping the allegedly infringing goods into New York: "those shipments were purposeful and substantially related to plaintiffs' claim of trademark infringement"); Chloé, 616 F.3d at 170 (stating that the "single act of shipping a counterfeit Chloé bag might well be sufficient, by itself, to subject [the defendant] to the jurisdiction of a New York court under section 302(a)(1)").

In this case, the question of whether the transaction occurred in New York is more complicated because the sale of allegedly infringing goods occurred online through Defendants' Amazon storefront and the goods were shipped to New York by Amazon. When analyzing whether a defendant's internet activity provides the Court with jurisdiction, "'the likelihood that

7

personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" Best Van Lines, 490 F.3d at 251 (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122 (W.D. Pa. 1997)). Thus, courts apply a "sliding scale" test based on the level of a website's interactivity. A website that merely provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction. See, e.g., ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."). However, if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is "transacting business" in New York and is therefore subject to the court's jurisdiction. See Hsin Ten Enter. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant."); see also, e.g., Mattel, Inc. v. Adventure Apparel, No. 00-CV-4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) ("Here, Falsone ordered allegedly infringing merchandise from Adventure over its web site, using his credit card, and Adventure shipped that

merchandise into New York. This activity not only involved the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line. These activities were sufficient to bring Adventure into the category of a defendant 'transact[ing] any business,' via the internet, in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1).").

Here, however, although Defendants sold their products online and consummated sales via the internet, they did not maintain the website(s) or personally ship their products to consumers. According to Defendants, they merely "created a username, posted an item for sale on Amazon, and shipped the item to the Amazon's [sic] order fulfillment office."[3] (Defs. Mot. 6.) One court in New York noted that the "sliding scale" analysis discussed above "makes little sense in the eBay context since eBay, and not the user, controls the interactivity and marketing efforts of the website." Sayeedi v. Walser, 15 Misc. 3d 621, 627, 835 N.Y.S.2d 840, 845 (Civ. Ct. Richmond Cnty. 2007). When faced with the use of Amazon or eBay to transact business, courts have instead focused on the extent to which the website "is used as a means for establishing regular business with a remote forum." Boschetto v. Hansing, 539 F.3d 1011, 1019

---

[3] Defendants do not address their use of eBay to market and sell their products, so the Court does not know whether Defendants or some third party fulfills the orders submitted through eBay.

(9th Cir. 2008). The "usual online auction process" where an unsophisticated seller uses eBay's template to post an item for sale and sells and ships the item to the highest bidder typically "does not rise to the level of purposeful conduct required to assert specific jurisdiction," Sayeedi, 15 Misc. 3d at 627-28, 835 N.Y.S.2d at 845-46 (collecting cases); see also Jones v. Munroe, 2 Misc. 3d 24, 25, 773 N.Y.S.2d 498, 498 (1st Dep't 2003), whereas jurisdiction is proper when a sophisticated seller operates a commercial business through eBay or Amazon, see Dedvukaj v. Maloney, 447 F. Supp. 2d 813, 818-23 (E.D. Mich. 2006) (finding jurisdiction over an eBay "Power Seller" who displayed favorable marketing statistics, required a warehouse for the storage of goods, offered a toll-free number to customers, and encouraged viewers to visit the seller's eBay store); Malcolm v. Esposito, 63 Va. Cir. 440, 446 (Cir. Ct. 2003) (finding jurisdiction over commercial "power sellers" with 213 sales on eBay who represented that they had local, national, and international eBay customers); cf. Boschetto, 539 F.3d at 1018 (finding no jurisdiction because the plaintiff did "not allege that any of the Defendants [were] using eBay to conduct business generally"); Sayeedi, 15 Misc. 3d at 628, 835 N.Y.S.2d at 846 (finding no jurisdiction, in part, because "[n]o evidence was provided by Plaintiff as to Defendant's overall eBay statistics, experience, or of any marketing directed at

10

potential customers, designed for instance, to welcome bids from New Yorkers or any other acts that indicate Defendant may be purposefully availing himself specifically to the business of New Yorkers or any desire to take advantage of New York law").

Defendants in the present case fall into the second category. They marketed and sold their products exclusively through Amazon and eBay, and, as of October 2011, entered into at least 46,000 separate transactions with individual buyers across the country. They used eBay and Amazon to expand their market "literally to the world" and "avail[ed] themselves of the benefits of this greatly expanded marketplace." Dedvukaj, 447 F. Supp. 2d at 820. As one court stated:

> It should, in the context of these commercial relationships, be no great surprise to sellers--and certainly no unfair burden to them--if, when a commercial transaction formed over and through the internet does not meet a buyer's expectations, they might be called upon to respond in a legal forum in the buyer's home state. Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.

Id. So, even though Defendants did not personally manage the websites through which they sold their products, their internet-based activities established regular business with foreign jurisdictions, including New York.

Thus, the Court finds that Defendants' sale of the allegedly counterfeit item to Plaintiff in New York through Amazon.com amounted to transacting business in New York sufficient to establish long arm jurisdiction under C.P.L.R. 302(a)(1).

2. The Due Process Clause

Having established that Defendants fall within the reach of New York's long-arm statute, the next issue is whether the Court's exercise of jurisdiction over Defendants comports with the Constitution's due process guarantees. Asahi Metal Indus. Co. v. Cal. Super. Ct., Solano Cnty., 480 U.S. 102, 108-09, 107 S. Ct. 1026, 94 L. Ed. 2d (1987). These guarantees are satisfied when a defendant has certain minimum contacts with the forum state such that maintenance of the suit would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks and citation omitted). The analysis involves two related inquiries: the "minimum contacts" inquiry and the "reasonableness" inquiry. Chloé, 616 F.3d at 171.

a. Minimum Contacts

To establish that Defendants have the requisite minimum contacts with the forum, Plaintiff must show that Defendants purposely availed themselves of the privilege of

doing business in New York. Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1028 (2d Cir. 1997). Here, Defendants marketed and sold their products nationwide through Amazon and eBay, and, on at least three occasions, received orders from Plaintiff in New York and arranged for products to be shipped to Plaintiff in New York. Such conduct is sufficient to satisfy due process's "minimum contacts" inquiry. See, e.g., Chloé, 616 F.3d at 171 (finding a defendant who offered his product for sale to New York consumers on his company's website and selling the product to New York consumers "'purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'" (alterations in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))); Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 243 (2d Cir. 1999) (finding personal jurisdiction where an "'exclusive sales rights' agreement, which contemplates that Kurz-Hastings will sell Navitas's machines in North America and throughout the world, serves as evidence of Navitas's attempt to serve the New York market, albeit indirectly").

    b.    Reasonableness

Plaintiff must also demonstrate that the exercise of jurisdiction over Defendants would not "offend traditional notions of fair play and substantial justice." Asahi, 480 U.S.

at 113 (internal quotation marks and citation omitted). A court must consider five factors in determining whether the exercise of jurisdiction is reasonable: (1) the burden on Defendants, (2) the interests of the forum state, (3) Plaintiff's interest in obtaining relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." Id.; accord Chloé, 616 F.3d at 173. The Court will briefly address these factors.

As to the first factor, it is undisputed that Defendants will be burdened by Plaintiff's choice of forum: Defendants are two individuals that live and work in Oregon. However, Defendants' "generalized complaints of inconvenience arising from having to defend [themselves] from suit in New York do not add up to 'a compelling case that . . . would render jurisdiction unreasonable.'" Chloé, 616 F.3d at 173 (quoting Burger King, 471 U.S. at 477). The second factor weighs in Plaintiff's favor, as New York, or any forum state for that matter, has a "manifest interest in providing effective means of redress for its residents." Id. (quoting Burger King, 471 U.S. at 483). The third factor also favors Plaintiff, as Plaintiff chose New York as a forum, Plaintiff is located in New York, and presumably its witnesses and evidence are located in New York. The fourth and fifth factors appear to be neutral.

There being no factors that favor Defendants, the Court finds that asserting jurisdiction over Defendants comports with "traditional notions of fair play and substantial justice," Asahi, 480 U.S. at 113 and, accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

## II. Venue

Defendants also move to dismiss under Rule 12(b)(3) for improper venue and, in the alternative, move to transfer venue to United States District Court for the District of Oregon under 28 U.S.C. § 1404(a).

### A. Motion to Dismiss for Improper Venue

Rule 12(b)(3) allows a defendant to move to dismiss a claim based on "improper venue." When considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. Cartier v. Micha, Inc., No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). In ruling on the motion, however, the Court may rely on facts and consider documents outside of the Complaint. See id. Further, Plaintiff bears the burden of proving that venue is proper. See id.

Venue is governed by 28 U.S.C. § 1391(b)(1),[4] which states, in relevant part, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Courts in trademark infringement cases have held that venue may be proper "in each jurisdiction where infringement is properly alleged to have occurred." Mattel, 2001 WL 286728, at *4 (internal quotation marks and citation omitted); see also Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 182 (S.D.N.Y. 1995). "At a minimum, the defendant must have targeted its marketing and advertising efforts at the district in question, or have actually sold its products there." Mattel, 2001 WL 286728 at *4. (internal quotation marks and citation omitted). When the marketing activity or sale occurred via the internet, courts in New York apply the same principles which govern whether a website confers personal jurisdiction. See, e.g., id. at *5; Hsin Ten Enter., 138 F. Supp. 2d at 460.

Accordingly, for the reasons discussed above, venue is proper in the Eastern District of New York, and the motion to dismiss for improper venue is DENIED.

---

[4] Section 1391 was amended in December 2011 after Defendants filed their motion to dismiss. However, it is the amended venue statute, not the version of the statute that was in effect when Plaintiff commenced its action, that applies to the present motion. See Moore v. Agency for Int'l Dev., 994 F.2d 874, 878-79 (D.D.C. 1993); Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1280 (8th Cir. 1994).

16

B. <u>Motion to Transfer Venue</u>

District courts may transfer a matter from one venue to another "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts have broad discretion in deciding whether a transfer is warranted, and they consider factors that include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

<u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 106-07 (2d Cir. 2006) (alteration in original) (internal quotation marks and citation omitted).

The party requesting transfer carries the "burden of making out a strong case for transfer," <u>N.Y. Marine & Gen, Ins. Co. v. Lafarge N. Am.</u>, 599 F.3d 102, 113-14 (2d Cir. 2010) (internal quotation marks and citation omitted), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," <u>Wildwood Imps. v. M/V Zim Shanghai</u>, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005); <u>see also</u> <u>N.Y. Marine</u>, 599 F.3d at 114.

17

The Court finds that Defendants failed to meet their burden. Defendants argue that Plaintiff's choice of forum is entitled to little or no weight because this is an action seeking a declaratory judgment. This is an incorrect statement of both the law and the facts. This action is not a declaratory action; rather, Plaintiff is seeking injunctive and compensatory relief. (Compl. ¶¶ A-G.) And a plaintiff's choice of forum is always given great weight. D.H. Blair, 462 F.3d at 107.[5] Defendants also argue that the "relative means of the parties strongly favors the Oregon forum." (Defs. Mot. 12.) However, "[a] party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack therof) would be unduly burdensome to his finances." MasterCard Int'l Inc. v. Lexcel Solutions, Inc., No. 03-CV-7157, 2004 WL 1368299, at *7 (S.D.N.Y. June 16, 2004) (internal quotation marks and citations omitted); see also Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998). Yet, here, Defendants' only provide the Court with the unsupported allegations that Plaintiff is a "powerful and established corporation" that has "many employees and several

---

[5] The cases cited by Defendants are inapposite. The New York Times Co. v. Gonzales, 459 F.3d 160 (2d Cir. 2006), deals with whether a court abused its discretion in entertaining a declaratory judgment action, and Sentry Corp. v. Conal International Corp., 164 F. Supp. 770 (S.D.N.Y. 1958), deals with the first-filed rule.

millions of dollars in annual revenue" compared to Defendants who "are individuals running a small internet venture." (Defs. Mot. 12.) They provide no information about their own resources and financial ability to defend this action in New York, and, accordingly, the Court places little weight on this factor.

The Court finds that the balance of the remaining factors weigh in favor of a New York forum. The majority of the evidence related to this trademark infringement claim will likely come from Envirocare's records: Envirocare holds the registered trademark in New York, the allegedly infringing products were shipped to and tested in New York, and the Plaintiff's office is located in New York. Defendants even concede that "the location of documents and sources of proof is [sic] neutral." (Defs. Mot. 11.) Similarly, all of Envirocare's witnesses are in New York.[6] Finally, while Defendants will undoubtedly be inconvenienced by travel to New York, Plaintiff would be equally inconvenienced by travel to Oregon. Accordingly, Defendants' motion to change venue is also DENIED.

---

[6] Defendants assert that Oregon would be a more convenient forum for its witnesses from Amazon and Northwest; however, Defendants failed to provide the Court with information regarding where these entities are located and why Oregon would be a more convenient forum that New York.

## CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED in its entirety.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED: June 4, 2012
Central Islip, New York